| 57   243|
|159s  381|

## Union Rendering Company v. Annie Kreft.

1.  NEGLIGENCE—*Loading Dead Animals in Public Streets.*—An employe of a rendering company was endeavoring to load the carcass of a dead animal upon a truck wagon in the public street of a populous portion of a great city, surrounded by a large number of people who had been attracted to the spot by what was going on.   He depended upon a team of mules to draw the carcass upon the wagon by means of a chain, and dropping the lines in the street by the side of the wagon he depended upon his voice to guide the mules.   They became unruly and floundered around and upon the sidewalk, seriously injuring the appellee.   A judgment for $2,500 was sustained.

Memorandum.—Action for personal injuries.   Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding.   Heard in this court at the October term, 1894, and affirmed. Opinion filed January 10, 1895.

COY & BROCKWAY, attorneys for appellant.

MERRITT W. PINCKNEY and WILLIAM H. TATGE, attorneys for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment recovered in an action of trespass on the case brought by appellee, a minor, by her next friend, against the appellant.

The appellant is an Illinois corporation  engaged in the business of rendering the carcasses of dead animals, and in the prosecution of its business employed teams and men to gather up the bodies of animals that are found dead on the streets, and in other places in Chicago.

For such purpose, low wagons specially constructed, with skids attached to the rear, are used, and up the inclined plane formed by the skids reaching from the ground to the platform bottom of the wagon, the carcasses are hauled. The team employed in drawing the wagon does the loading by being detached from the wagon and hitched to one end of a chain which passes lengthwise over the wagon, and the other end of which is fastened to the neck of the carcass. Then, the wagon remaining stationary, the team is started ahead and draws the carcass forward up the skids and upon the wagon platform. But one man accompanies the team and wagon, and during the act of loading, this man stations himself near the carcass for the purpose of guiding it, and starts or stops the team by word of mouth, leaving the reins on the ground at the other end of the wagon where the team is.

In this particular instance the carcass was either very heavy or caught against something, and the team, instead of pulling straight ahead as it should have done, sheered away sideways twice toward the middle of the street, and turned as if to come back toward the wagon. On both of these occasions the driver, who stood behind the wagon where the carcass was, went forward to the team and jerked and whipped the team back into its proper position, and then leaving the reins on the ground, returned to the rear of the wagon, from which position he again started the team by word.

Starting the team for the third time in this manner, the team, being again unable or unwilling to pull straight ahead, suddenly sheered off to and upon the sidewalk, which was about fifteen feet from the team before it turned, and came down along it until nearly opposite to where the driver was standing, who headed them off as they approached.

Standing upon the sidewalk at the time were a large number of people, among whom was the appellee, a girl five years of age, and she was run upon by the team and received severe injuries.

Special findings were submitted to the jury at the request

of the defendant (appellant), and they found that the driver of the team was negligent, and that the child was permanently injured, and returned a verdict in favor of the plaintiff for $5,000. A remittitur of $2,500 was entered by the plaintiff, and judgment was entered for $2,500.

No fault with the instructions, and no question as to the admission or rejection of evidence is argued or pointed out. The argument is wholly directed against the findings by the jury as to the negligence of the driver, and the permanent injury of the appellee, and to the excessiveness of the damages.

It was shown by the defendant that the method pursued in doing the particular business out of which the injury arose, was the customary way in which the business of appellant had been carried on for a number of years, and that this was the first time it had resulted in an injury to bystanders; that the mules, comprising the team in question, were well broken to the business and had been used in the business about a year, and were taught to start and stop by word instead of by rein; and that the appliances employed generally, and on this particular occasion, were of the customary and approved kind.

All this may be and doubtless is true, but if, on the particular occasion, when surrounded by a large number of people who had been attracted to the spot by what was going on, and on a public street in a populous portion of a large city, the driver did so conduct himself in the management of the team as to cause the latter to suddenly leave the roadway where the work was being done, and mount upon the sidewalk in the midst of people who had a right to be there, and trample upon one who did not get away, and the jury to whom the cause was submitted found such conduct by the driver to be negligent, a court may not, in the exercise of its legitimate duties, say that such a finding is unwarranted.

The chain to which the team was attached was about twenty feet long, and it was at best questionable prudence to permit a system, under which a team operating in a city

street, with no driver at the reins, might by a sudden sheering swing around from the roadway to and upon the sidewalk; and if added to a system which would permit so much freedom to a team, the driver should by repeated whipping and jerking irritate and excite the team, we are not prepared to say that such conduct does not make a clear case of negligence.

As to the excessiveness of damages there can be little said. The jury found that the plaintiff's injury is permanent in character, upon evidence that admits of but little doubt that the injury to the child's head, caused by a stroke of a mule's hoof and perhaps by other of her hurts, has seriously deranged her mind.

What is compensation under such circumstances is a question upon which many people would find difficulty in agreeing, and our system of jurisprudence permits no safer method of measuring it than by the verdict of a jury, and it is only where the verdict, measured by the evidence, is so grossly extravagant as to make the inference irresistible that it is punitive in character, or as to shock the conscience of the court, that it may safely be disturbed.

As between the amount of the judgment and $500, which appellant's counsel, in their brief, admit would be a reasonable compensation to appellee, there is not such a difference, under the circumstances of the case, as to justify an inference that punitive damages entered into the judgment, and it can not be said to be shocking to the conscience when considered as an award for a deranged intellect.

We see no escape, under the facts and the law, for the appellant, and therefore affirm the judgment.